<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IRENE PICKERIN,** *Plaintiff,* v. **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** *Defendant.* | No. 14-6130 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before this Court is Plaintiff Irene Pickerin's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of disability insurance benefits ("DIB") to Plaintiff. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the administrative law judge ("ALJ"): (1) failed to consult a vocational expert ("VE") and unreasonably cited to SSR 85-15 at step five; and (2) incorrectly assessed the Plaintiff's residual functional capacity ("RFC"). For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision must be **AFFIRMED**.

I.   **LEGAL STANDARD**

   A.  **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 610 (3d Cir. 2014). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as

1

adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quotation omitted). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003). "[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

### B.  Five-Step Sequential Analysis of Adult Disability

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed

impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" Id. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. DISCUSSION

### A. Procedural History

This case arises out of Plaintiff's November 12, 2007 application for disability insurance benefits. Tr. 186-88, 204. Her application was denied initially on January 26, 2008 and on reconsideration on March 26, 2010. Tr. 77-79, 82-85. Plaintiff then requested an administrative hearing to review the application. Tr. 86-87. A hearing was held before ALJ Leonard Olarsch on July 14, 2011, and the ALJ dismissed the DIB claim on November 21, 2011, based on the doctrine of administrative *res judicata*. Tr. 62-69. Plaintiff sought review by the Appeals Council. Tr. 86-87. The Appeals Council, on August 2, 2012, remanded the claim to the ALJ for a more thorough

3

analysis of, among other things, whether *res judicata* applied to Plaintiff's claim.  Tr. 70-76.  The ALJ held another administrative hearing on December 20, 2012.  Tr. 37-55.  The ALJ issued a decision on January 22, 2013 and determined that Plaintiff did not meet the definition of disability during the relevant period.  Tr. 10-21.  Plaintiff again sought Appeals Council review, but the request was denied on July 31, 2014.  Tr. 1-6.  This appeal followed.

### B.  Factual Background

Plaintiff was born in 1967.  Tr. 186.  She was twenty-nine on the alleged disability onset date of August 28, 1996, and she was thirty-four years old on the date last insured ("DLI") of September 30, 2001.  Tr. 17, 39, 204.  Plaintiff previously worked as a nurse.  Tr. 16, 28, 200.  Plaintiff also worked at K-Mart below the substantial gainful activity ("SGA") level during the relevant period.  Tr. 12, 192, 233.

On November 21, 1996, Plaintiff visited Noah R. Gilson, M.D., and complained of recurring severe headaches with associated dizziness, in addition to one seizure that had occurred approximately two months earlier, after she stayed up for the majority of the night with her baby.  Tr. 352.  She indicated that she did not go to the hospital after this seizure and had not had a seizure prior or subsequent to the initial one.  Id.  An EEG showed mild slowing and an MRI showed some abnormalities, which Dr. Gilson believed to be congenital.  Tr. 353.  Plaintiff's CT scan was negative.  Id.

Dr. Gilson observed that Plaintiff was awake, alert, and fully oriented, and she had no deficits in her cranial nerves.  Id.  She had no pronator drift or tremor, and she retained normal bulk and tone.  Id.  She also had normal arm and leg strength, normal sensation and coordination, normal gait and station, and maintained symmetrical reflexes.  Id.  Dr. Gilson concluded that Plaintiff had a single nocturnal grand mal seizure in September.  Id.  He believed the seizure was

provoked by significant sleep deprivation, which was the result of Plaintiff staying up with her baby. Tr. 353-54. Dr. Gilson also believed that Plaintiff's headaches were "a combination [of] muscle contraction headaches and migraines in the post partum state." Tr. 354.

On December 2, 1996, Dr. Gilson noted that Plaintiff had a "completely abnormal" MRI. Tr. 355. This was consistent with her neurologic abnormalities and seizure disorder. Id. On December 11, 1996, Plaintiff underwent an EEG, which was deemed to be abnormal due to intermittent, bitemporal slowing. Tr. 356-58. The following day, Dr. Gilson informed Plaintiff that the MRI and EEG results were consistent with a seizure disorder. Tr. 359. As a result, Dr. Gilson prescribed Depakote. Id.

On January 2, 1997, Plaintiff saw Dr. Gilson and complained of "strange" headaches. Tr. 360. The Depakote prescription had been increased by another doctor, but Plaintiff soon returned to the original dosage because it caused her too much fatigue. Id. Plaintiff reported a decrease in the general number of headaches, and she took Repan on an as-needed basis. Id. Plaintiff appeared to be awake, alert, and oriented when she was examined, and she had full coordination and extraocular movements without nystagmus. Id. Dr. Gilson did not believe Plaintiff's "strange" headaches were a seizure, and he advised Plaintiff to continue taking Depakote. Id.

On January 7, 1997, Plaintiff complained to Dr. Gilson that she was having severe headaches. Tr. 361. Dr. Gilson prescribed Tylenol and told her to take it along with Repan. Id. On February 13, 1997, Dr. Gilson wrote that since Plaintiff's last visit, she "ha[d] had no more of the typical migraines that she had experienced before associated with dizziness." Tr. 365. However, Plaintiff reported some sinus-type headaches. Id. An MRI showed there were significant changes in the right maxillary sinus. Id. When Plaintiff was examined, she appeared to be awake, alert, and oriented. Id. Plaintiff had no real pain besides some tenderness in the right

maxillary region.  Id.  Dr. Gilson told Plaintiff she should continue taking Depakote, and he referred her to another doctor for the sinus headaches.  Id.  She was told to follow up in approximately six months.  Id.

### C. The ALJ's Decision

In his January 22, 2013 decision, the ALJ employed the five-step sequential disability evaluation.  Tr. 10-21.  At the first step, the ALJ determined that Plaintiff did not perform SGA during the relevant period.  Tr. 12.  The ALJ noted, however, that Plaintiff worked under the SGA level at K-Mart in 2000.  Tr. 12, 192, 233.  At step two, the ALJ identified Plaintiff's seizure disorder as a severe impairment that caused significant limitations on Plaintiff's ability to perform basic work activities.  Tr. 12.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment contained in the Listings.  Id.

As for Plaintiff's RFC under step four, the ALJ found that through her date last insured, Plaintiff retained the ability to perform light work that involved no exposure to heights or hazards.  Tr. 13.  The ALJ further determined that Plaintiff was unable to perform any past relevant work.  Tr. 16.  At step five, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy.  Tr. 16-17.  Specifically, the ALJ noted that although Plaintiff did not have the RFC to perform the full range of light work, her non-exertional limitations (i.e., no exposure to heights or hazards) had "little or no effect on the occupational base of unskilled light work," based upon SSR 85-15.  Tr. 17.  The ALJ then applied the framework of Rule 202.21 of the Medical-Vocational Guidelines ("Grids") to find that Plaintiff was "not disabled."  Id.

**D. Analysis**

Plaintiff alleges that the Commissioner's decision was not supported by substantial evidence because the opinion: (1) failed to consult a vocational expert ("VE") and unreasonably cited to SSR 85-15 at step five; and (2) incorrectly assessed the Plaintiff's residual functional capacity ("RFC"). The Court disagrees and finds that the ALJ's findings are supported by substantial evidence.

**1. Reliance upon SSR 85-15 Rather than a VE**

Plaintiff first contends that remand is necessary based on the ALJ's failure to consult a vocational expert at step five. The Court disagrees.

The government bears the burden to show that jobs exist in the national economy that Plaintiff could perform, given her limitations. 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v). This burden is routinely satisfied through use of a VE. However, other methods exist to meet this burden. Where a claimant has only exertional limitations, use of the Grids[1] may satisfy the government's burden. Heckler v. Campbell, 461 U.S. 458, 467 (1983). However, where a claimant suffers from non-exertional limitations as well as exertional limitations, the Grids alone cannot support a finding that there are available jobs in the national economy. Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). In such a situation, the Grids may be used in conjunction with Social Security Regulations to determine if there are available jobs in the national economy if it is "crystal-clear that the SSR is probative as to the way in which the non-exertional limitations impact the ability to work, and thus, the occupational base." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005);

---

[1] The Grids use data from the Department of Labor's Dictionary of Occupational Titles ("DOT") to assess the existence of work in the national economy based on vocational factors and exertional levels. See 20 C.F.R. § 404.1569. A Grid rule mandates a finding of "disabled" or "not disabled" if all of the factors pertaining to a claimant's vocational profile and RFC coincide with a particular rule. See 20 C.F.R. § 404.1569; 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).

see also AR 01-1(3), 2001 WL 65745 (providing that Sykes does not apply when the ALJ cites an SSR in his or her analysis of how non-exertional limitations impact a claimant's occupational job base).

Here, the ALJ determined that Plaintiff's non-exertional limitations (no exposure to heights or hazards) would have no significant effect on work available in the national economy. Tr. 17. In support of this finding, the ALJ specifically cited to SSR 85-15. Id. SSR 85-15 is probative as to the way Plaintiff's non-exertional limitations would impact her work when it states, "A person with a seizure disorder who is restricted from being on unprotected elevations and near dangerous machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15. In this way, SSR 85-15 is crystal-clear and probative because Plaintiff has a seizure disorder and was assessed with an RFC to perform light work that involved no exposure to heights or hazards. Thus, Plaintiff is an example of someone whose environmental restrictions would not have an effect "on work that exists at all exertional levels." Id. The ALJ's reliance on SSR 85-15 was therefore not unreasonable and constitutes substantial evidence in support of his step five determination. See, e.g., Green v. Astrue, No. 10-2712, 2010 WL 5779406, at *4 (D.N.J. Feb. 10, 2010) (holding that the ALJ's reliance on SSR 85-15 instead of a vocational expert was not unreasonable for a claimant with a seizure disorder).[2]

---

[2] Plaintiff also argues that the ALJ failed to give advance notice of the Court's intent to rely on an SSR. Although the Third Circuit "urge[d]" that notice be given to claimants "as a matter of a fairness," advance notice is not required in every circumstance. Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005). Where notice is not given beforehand, the Court will "give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5." Id.; see also Breslin v. Comm'r of Soc. Sec., 509 F. App'x 149, 155 (3d Cir. 2013). The Court has done so here, and finds that the ALJ's decision was based on substantial evidence.

Next, the ALJ applied the Grids. Because Plaintiff's non-exertional limitations had no impact on the occupational base of unskilled light work, § 202.21 of the Grids mandated a finding of "not disabled" based upon Plaintiff's age, education, and work experience. Tr. 17. This finding was supported by substantial evidence.

### 2. Alleged Failure to Properly Assess Plaintiffs Residual Functional Capacity

Plaintiff also contends that remand is necessary based on the ALJ's failure to properly assess Plaintiff's RFC. The Court disagrees.

When the ALJ is making an RFC determination, a two-step process is followed. See 20 C.F.R. § 404.1529; SSR 96–7P. The first step is to determine whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96–7P. The second step is to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. Id. The ALJ must consider the entire record and determine the credibility of statements about intensity, persistence, or functionally limiting effects of pain or other symptoms that are not substantiated by objective medical evidence. Id.

Plaintiff does not provide any substantive support for her challenge to the ALJ's assessment that Plaintiff had the RFC to perform light work, with no exposure to heights or hazards. As an initial matter, Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment. Moreover, as was the case before the ALJ, virtually all of the medical evidence cited by Plaintiff significantly postdates when Plaintiff was last insured. See Pl.'s Br. at 20, Dkt. No. 8 (citing Tr. 318-32, 348-50); Tr. 16. A claimant is required to show that he or she was disabled prior to the date last insured. Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Thus, because it is Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not supported by substantial evidence, and Plaintiff has not identified any specific error, the ALJ's decision is affirmed.

**III.    CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order accompanies this opinion.

Date: September 29, 2016                         /s/ *Madeline Cox Arleo*
                                                 **Hon. Madeline Cox Arleo**
                                                 **UNITED STATES DISTRICT JUDGE**